Matthew Zerzo for Appellant and David Lee Brader for Appellees. I don't see your appellee. He's on the screen. Very good. Thank you. Please sit down. Mr. Zerzo, do you want to reserve any time? Yes, I would, please, if I could reserve three minutes. All right. Very good. May it please the Court. My name is Matt Zerzo. I am Counsel to the Appellant, Simon Rodriguez. I have the unenviable and difficult task of appearing in front of you less than 48 hours after the U.S. Supreme Court rendered its Bartenwerfer decision, which is, of course, new, very new. Its exact contours, implications, and reach are very much up for debate, and I did want to start, as I think I have to, addressing that decision. It is a new decision. Much is left to be decided as to its actual reach. I'll start first with the easiest issue, and that is, obviously, it was a 523A2A decision, not a 523A19 decision like we have here. But certainly many of the statements that the Supreme Court made with respect to statutory interpretation and the non-dischargeability context significantly undermine a lot of my brief, and I think I have to acknowledge that right up front. But I also think there are some significant distinctions that I want to bring to your attention. I would, of course, love the opportunity. Nobody knew when this decision was going to be handed down. It was certainly referenced in the briefs that the matter was pending. And, again, even though it's not directly on point because it does deal with a different subsection of non-dischargeability, there are certainly statements in the opinion, like I said, that do call into question some of my arguments. In particular, and there's certainly some colorful language, but I'll start first with the use of the passive voice. And in Justice Barrett's words, takes the actor off the stage. And, in other words, it doesn't really matter whether or not the debtor in bankruptcy committed the fraud. You can have imputed fraud under state law. Significantly, in Barton-Werfer, it was imputed due to a partnership. They were husband and wife, but a partnership regarding a real estate venture. That does not exist here significantly. You have a ruling, certainly, on the passive voice. Let's go to this case, though. I mean, in this case, there's been some mention of the fact that the findings of fact and conclusions of law were drafted by one of the counsel, then signed by the judge. But there's also the April 27, 2020, court decision. And is this really imputed? I mean, the judge, and this has not been appealed. I mean, this is the final order of the state court. Yes. And the judge says the evidence demonstrates that they, that was Mr. Robinson and Mr. Rodriguez, were directly and intimately involved in creating the material to sell the notes. This doesn't seem to me that the judge, I think the judge was making it clear that it was not imputed, that the debtor here was directly involved in the securities fraud. I would respectfully disagree with that. I think the statute that the state court judge relied upon is the vicarious liability statute under the Nevada Securities Act. And so there are certainly ways to impute direct liability. There is certainly an ability to find direct liability under the Nevada Securities Act. But that is not the subsection the judge went under. The judge also said in the state court order that Rodriguez, and I quote, Rodriguez spoke and gave advice to potential investors. Certainly so. And we addressed that head on in our brief. The only evidence presented was that he spoke to investors several years after they made their loans in an attempt to mollify their concerns about not being paid. There is absolutely no evidence that he took any part in the actual discussions with the investors prior to them making the loans or the investments. In fact, the only evidence presented to the state court was that he was copied along with several other people on a draft of an investor presentation. There is no evidence he actually took part. Okay. Well, then we have the findings of fact. And it provides, and again, the findings of fact haven't been appealed. The state court findings of fact haven't been appealed. One of those is that Mr. Rodriguez was the CFO and was designated as the point of contact for investors who had questions about the promissory note offering. And that's all true. And, again, the Nevada state court did not say for what purpose he was designated the point of contact. And the point is that the only time he was contacted was several years after the investments were made. But, I mean, can we even go into this? Doesn't the Rooker-Feldman doctrine tell us that we're stuck with the state court findings and the state court judgment? We certainly are. And I think even Justice Barrett said in Bartenwerfer, we take the debt as we find it, or words to that effect, very matter-of-factly. I don't think it's a violation of the Rooker-Feldman doctrine to determine whether the state court findings were sufficient for purposes of non-dischargeability. But this is almost like a strict liability section. You have to have a judgment for a securities violation entered either before or after the case is filed. I mean, isn't the inquiry really narrow for 523A19? Well, I think the Ninth Circuit's decision in Sherman may call into question how much of a strict liability determination it is. And perhaps Bartenwerfer has called into question some of the holdings. Let's deal with Sherman for a second. In that case, the attorney that was the debtor and was arguing that Section 19 doesn't apply to him, his liability was to disgorge fees that he had not earned. It wasn't dealing with securities. It was dealing with the fact that he was paid fees that he shouldn't have been paid. That certainly is true, Your Honor. And that's a – I can't say that – I'm not sure I have the right way to say this. My client wasn't as innocent, perhaps, as the attorney in Sherman who was the subject of the disgorgement order. That was just an attorney that was holding funds for payment of clients. So, you know, we've all – everyone on this panel has had relief-from-stay motions, for example, and people say, well, here relief-from-stay was granted. You should grant relief-from-stay here, Your Honor. Well, but we've also had cases where relief-from-stay shouldn't be granted, and there's cases that say that. So we have a case where Mr. Sherman is – you know, in non-dischargeability statute, Sub 19 doesn't apply to him, but he's different. Sometimes people are going to be like Mr. Sherman, and sometimes people are going to – judges are going to determine like they did with Mr. Rodriguez in past cases or past hearings that he is different from Mr. Sherman. He is a controlling person. Well, I think I would agree with that, and I think there's certainly shades of culpability. You can certainly have direct liability where it's black and white that there's culpable conduct. You can have the attorney in Sherman that clearly was just an innocent bystander, and I think Mr. Rodriguez falls somewhere in between in that continuum, quite frankly. You certainly have some findings from the state court regarding his involvement. The question is when, and the significance – But Judge Brand's point was the code just requires a judgment be entered against the individual on a securities violation before or after the case is filed. It doesn't require any determination of the amount of culpability, the amount of liability, whether you were in control. How do you get around that part of the statute? Well, I think several ways. I think the Sherman case and the Ninth Circuit does – Okay, but Sherman is not the same case as this, so ignore Sherman. Give me another good reason. Because of – I think the state – I'm not – certainly the facts in Sherman are slightly different, but I think the Ninth Circuit's interpretation of the statute and its guidance in how you interpret 523A19 – Wasn't a judgment entered against Sherman for securities violation at all? There was a – I don't think technically. There was a disgorgement. Right. It had nothing to do with the sale of securities. It had to do with his attorney's fees. This is not that case, is it? Agreed. But the interpretive guidance of 523A19 provided in Sherman I think does guide your determination here. And certainly some of that was called into question by Barton Werfer, but the statements regarding showing an actual securities law violation I think still have some import here. And I think a lot of the lower court case law since Sherman was decided, the Ponzi scheme cases we cited where you have – and, again, that's probably more akin to the attorney in Sherman, you know, innocent net winners in a Ponzi scheme. Clearly they didn't engage in culpable conduct. And I do think here, Your Honors, it's not a violation of the Rooker-Feldman doctrine to argue that the state court did not make clear and specific enough findings to determine culpable conduct. I think that is a different inquiry. I'm not trying to reverse the state court determination here in any way. I'm calling into question the sufficiency of the findings for purposes of satisfying the A19 statute. And I don't think it's simply – 523A19 is a simple question of only whether there was a judgment entered. You do need to look at the substance of the judgment, as you do in a lot of other non-dischargeability contexts, to determine whether the actual elements of non-dischargeability are satisfied. And the Ninth Circuit has said in Sherman – again, I know it's a different set of facts, and I know that the debtor in that case is arguably a lot more innocent than my debtor, and that my debtor is laboring under certain findings of a state court that, frankly, are very vague as to his involvement and when. But in this case, the state court said, with respect to securities law, that Mr. Rodriguez was, and I quote, a control person. Certainly, and that is a statutory, quite simple finding that he, according to the Nevada Secretary of State, was listed as the treasurer on its filing. It does not implicate anything more than him merely sitting in that role. It certainly does not mean that he took any active involvement in the issue. So can you point to anything in the statute that requires the kind of culpability that you're suggesting, the bank that the state court should have found? So I think I have to – you mean in 523A-19? I think I would have to point to what the Ninth Circuit in Sherman did, which is the statements that it has to be a violation for. And the discussion in my brief was that is not used anywhere else in any other 523A statute, certainly not in 523A-2A. Other non-dischargeability statutes discuss the non-dischargeability statute for taxes. If it's a tax debt and it otherwise meets the statutory parameters, it's non-dischargeable. And I think that would be the argument that the appellee would make as to A-19. It operates just like that. I'm arguing it operates more like a 523A-2A type of statute, where you do need to determine the sufficiency of the findings by the lower court when a party is coming. You parsed through – or your response to my quoting of the control person, but also in the order that the court prepared, as I mentioned earlier, it wasn't just saying it was a control person. The court found that he was intimately involved in creating the material to sell the notes. It wasn't that the crux of the securities violation claim? Well, that was a part of the finding necessary to find him indirectly liable vicariously, yes. It's a very low standard to meet. And I think – Well, intimately involved doesn't sound like vicarious liability to me. Well, Your Honor, respectfully, I do disagree. I think the actual liability finding was under the vicarious liability, not direct liability subsection of the Nevada Securities Act, and I think that is critical. But in any event, I do think this court can look at the sufficiency of the findings. I think you have extremely vague findings about when this conduct occurred. Conduct that occurred after the issuance really is irrelevant for purposes of non-dischargeability. And when an appellee, or in this case the plaintiffs, come in to bankruptcy court and rely solely on the sufficiency of those findings and there are defects in those findings, I think the proper remedy is to allow the debtor a chance at trial and also a chance for the plaintiffs to have their day in court with respect to whether that satisfies the non-dischargeability statute. And so I think it is a separate inquiry, and I see I've gone way beyond my time for reserving for rebuttal, so if I could reserve the rest of my time for rebuttal. Yes, thank you. All right, please begin. Good morning, Your Honors. David Liebreder on behalf of the appellants, and thank you for the opportunity to appear via Zoom. I was going to be, I'm afraid, a casualty of the storm through the upper Midwest, and I was a little afraid that I would be delayed or not make it to the hearing. So, again, I thank you and Ms. Sproul for giving me the opportunity to appear via Zoom. You know, the time to address the defects in the state court findings was, you know, during the preparation of the findings of facts, conclusions of law. Mr. Rodriguez was represented by an attorney. This case went to trial. He called witnesses. He testified himself, represented by an attorney. Those findings of facts were exchanged with his attorney. For whatever reason, he chose not to make any changes to them, so they were submitted. Likewise, the judgment went in. It was provided to Mr. Gewurter. He chose not to make any changes to it. Judgment was entered. There were several, I think four, post-trial motions Mr. Rodriguez filed. They were all denied, and no appeal was filed. So, we have a final judgment, and I think Judge Nakagawa, the motion for summary judgment was proper. There were just no dispute as to any material facts. You know, A523 is A19. It is fairly simple. It was added in 2002. I know that the appellant has some issues with it, maybe feeling it's too broad, but there have been no changes to 523A19 in the 20 years that it's been law. And I think it's important to talk about some of the reasons that A19 was put in place back in 2002. You know, when they exempted from discharge state security law violations, they were obviously talking about the Uniform Securities Act, which was passed in 1956, and Nevada's NRS 9660, which Mr. Rodriguez was found to have violated, is the civil liability section of the Uniform Securities Act that Nevada has adopted, as well as 40 other states. So, there's 40-plus states that have adopted a similar statute. So, when Congress is debating the Sarbanes-Oxley Act, which A19 is based on, they clearly were aware that all of these states are following this Uniform Securities Act, and that there's going to be liability that's going to be derived from there. And built into 9660 is this controlled person liability. And this is the issue that was litigated in front of Judge Silva in state court in February of 2000. And Judge Nakagawa, I think, appropriately found issue preclusion. There was identical issues in the prior case. Sale of unregistered securities, which is prescribed under 9460. 9660 gives it to life in the civil liability section, which includes controlled person liability, as well as an affirmative defense test. And I would agree, Your Honor, that Mr. Rodriguez was intimately involved. Those were Judge Silva's words in her decision. She also referred to him as the proverbial closer. There are documents that we've included in our excerpt of records, including the PowerPoint presentation, where Mr. Rodriguez is listed as the point of contact for investors. That's not an accident. Unregistered securities don't just sell themselves. We're talking about a very small company. I think there were four employees. All of them were officers. They raised $4 million. My clients were all elderly investors. Most of them invested through retirement accounts. And so those are the people that were targeted. Mr. Rodriguez, in addition, introduced the unregistered broker-dealer that sold these securities to the company. So he went out and he found the unregistered broker-dealer that wound up selling these investments to all of the parties. In addition, there are several e-mails in there. Again, I think that if Judge Nakagawa was going to be inclined to look at the record, open it up, which I don't think he should have done, but there was sufficient information. And all of the exhibits were included in the motion for summary judgment that he ruled on. And he went through, you know, there were four pages. He went through the record pretty completely talking about distinguishing Sherman in particular. And I don't know if the court needs me to talk about Sherman, but that's a very different case. Obviously, no securities law violation. It's purely a disgorgement case where Mr. Sherman, the attorney, received some money from a Ponzi scheme. That's pretty similar to several of the other cases that Mr. Rodriguez cited where these investors were net winners in Ponzi schemes. They were able to discharge the debt in bankruptcy, but they did not commit securities law violations like Mr. Rodriguez did. They were simply net winners in a Ponzi scheme, which essentially are the earlier investors who received money unbeknownst to them, which comes from the Ponzi scheme. And then when it collapses, you have the receiver come in, and he'll sue some of these earlier investors to recover money for the estate. I can tell you from having represented several of those people, it comes as a shock because they've spent that money. They don't have it. They go into bankruptcy court. And rightly so, those debts are discharged because they're not for securities law violations like you have with Mr. Rodriguez. So I'm happy, Your Honors. I think you clearly grasped the issues. Sherman is inapplicable. I mean, it's applicable, but on the facts, it's very different. And I do want to point out one provision in Sherman that I think leaves open the door to holding controlled persons liable for securities law debts, and that's on page 1018, 658F3rd, page 1018, where they talk about the concern. They're talking about, as Sherman notes, if the third party in question has actually aided or abetted a securities violation, that party may be prosecuted for a violation of the securities laws. NRS 9660 lists a bunch of – there's five or six categories of individuals or entities that could be liable, in addition to the actual issuer or seller of the securities. Material aiders, broker-dealers, and controlled persons. And I take issue with what Mr. Zerzow said. Mr. Rodriguez was not just someone listed on the Nevada Secretary of State's website. He was an 11% shareholder of this company. He was involved in the preparation of the documents. He was the CFO of the company. There were a whole host of reasons to find him as a controlled person. And, again, the time to object to the findings in this case was not in front of Judge Nakagawa. It was in front of Judge Silva at the time of the trial and when the findings of facts were issued. So, Your Honors, if you have any questions for me, I'm happy to try to answer them. I don't. I don't. Thank you. Thank you. We have no questions. Thank you. Briefly, in rebuttal, Judge Corbett, I did want to address just very clearly, I think the State Court's decision was clearly premised on NRS 9660 sub 4. It was not a sub 1 finding. Sub 1 is the actual direct liability. Sub 4 is vicarious. And we know that by the other findings the State Court made with respect to the inverse negligence affirmative defense. And the judge would have not discussed the rest of NRS 9660 sub 4 if it were making that direct liability finding. You would not need to have shown controlled person status. You would not need to have shown any of the other requirements for joint and several liability under sub 4. So I do think it's a mistake of the record for counsel to suggest that there was a direct liability finding here, just to be clear. And I did want to make sure that was very clear. Ultimately, Your Honors, I do think you can look at the sufficiency of the evidence under an A19 claim. I do not believe it's a simple black or white issue of whether or not, for example, there's a tax debt or not and it meets the statutory parameters. I do believe that Sherman does, that the discussion of Sherman and its guidance to you on how to properly interpret that statute does require you to determine culpable conduct. Again, I appreciate that the litigant in that case was far more innocent, perhaps, than mine. And there are certainly findings against my client. The question is the sufficiency of them and, frankly, the vagueness of them. Stating that he was a closer, but not stating what he did, when he did it, whether it was before or after the investments were made. Statements that he was a point of contact, but no evidence that he actually discussed anything with a single investor. That is not in the record. The only thing that is in the record is several years later, he had discussions with investors long after they had lent the money. That is the problem with simple, blind, slavish reliance on vague findings of the state court in the non-dischargeability context. It isn't sufficient under the statutory scheme as the Ninth Circuit has directed you to interpret in Sherman. Thank you very much, Your Honors. Thank you. Thank you both for your good arguments. The matter will be submitted.
judges: Brand, Gan, and Corbit